Flint v. Dartmouth-Hitchcock Med Ctr   CV-97-67-SD    07/14/98
                UNITED STATES DISTRICT COURT FOR THE

                    DISTRICT OF NEW HAMPSHIRE


Richard A. Flint;
Diane F. Flint

_____v.                               Civil No. 97-67-SD

Dartmouth-Hitchcock Medical Center/
 Mary Hitchcock Memorial Hospital;
The Lahey-Hitchcock Clinic;
John E. Sutton, Jr., M.D.;
Timothy James, M.D.


                          O R D E R


     This order addresses the issues raised by a number of

pending pretrial motions.


1.  Background

     Plaintiff Richard Flint, afflicted with esophageal cancer,

underwent the surgical procedure known as an esophagogastrectomy[1]

on February 24, 1994.  For a period immediately following

surgery, defendant Dr. Sutton, Flint's attending surgeon, ordered

that Flint receive no nutrition by mouth.[2]

     Despite this order, however, Mr. Flint was given "sips" of

clear liquid (apparently water) by mouth prior to March 1, 1994.

On March 27 and 28, 1994, the physician's order sheet contains

_____

     [1]Excision of the esophagus and stomach, usually the distal
portion of the esophagus and the proximal stomach.  DORLAND'S
ILLUSTRATED MEDICAL DICTIONARY 581 (28th ed. W.B. Saunders Co. 1994).

     [2]The medical chart reference was "NPO", the abbreviation for
Latin *nil per os*, nothing by mouth.  DORLAND'S, supra, at 1153.

orders for either a barium swallow or a gastrografin swallow or both.[3]  It appears that a gastrografin swallow is used to determine whether the repaired stomach is leaking, and a barium swallow is used to determine whether the stomach is emptying its contents.

Orders directed to the radiology department of the defendant hospital are set forth on a separate requisition slip, which does not become part of the patient's medical records.[4]  At the time Mr. Flint was under treatment by the defendants, it was the practice of the radiology department to retain the requisition slips for only a period of six months.  Accordingly, the requisition for Mr. Flint's radiological procedures was destroyed in accordance with this practice.

The March 1, 1994, interpretive radiology report contained in plaintiff's medical records described the administration of a gastrografin swallow, which was interpreted by the radiologist to indicate that plaintiff's stomach was not leaking.  Thereafter, Mr. Flint was started on an oral diet, but on March 5, 1994, he aspirated his stomach contents into his lungs, with resultant extensive medical treatment and alleged permanent disability.  Plaintiffs contend that failure of the defendants to realize that

---

[3]Barium sulfate is a white powder without odor or taste and free from grittiness, which is used as a contrast medium in radiography of the digestive tract.  DORLAND'S, supra, at 183.
Gastrografin is the trademark for a preparation of meglumine diatrizoate, DORLAND'S, supra, at 682, which is also used as a radiologic contrast medium, id. at 462, 1003.

[4]The interpretive report of the radiologist is, however, made a part of the patient's medical record.

Mr. Flint's stomach was not emptying properly was a violation of the applicable standard of medical care.

## 2.  Defendants' Motion in Limine to Bar Evidence of Oral Feeding Prior to March 1, 1994, document 10

Citing to the deposition of Dr. Martin Felder, a medical expert retained by plaintiffs, defendants contend that Dr. Felder concurred with the defendants' medical expert, Dr. Andrew Warshaw, that the "sips" of clear liquid given to Mr. Flint prior to March 1, 1994, have no tendency to prove causation of the aspiration of plaintiff's stomach contents.  Defendants therefore argue that, as probative expert testimony on that issue is lacking, the evidence of the "sips" administered prior to March 1, 1994, is irrelevant, Fed. R. Evid. 401, 402,[5] or should be excluded as confusing and misleading to the jury, Fed. R. Evid. 403.[6]

---

[5]Fed. R. Evid. 401 provides, "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
Fed. R. Evid. 402 provides, "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority.  Evidence which is not relevant is not admissible."

[6]Rule 403, Fed. R. Evid., provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

3

The plaintiffs object, arguing that the evidence of the "sips" administered prior to March 1, 1994, is admissible to rebut defendants' argument that they closely and accurately monitored the input and output from Mr. Flint's gastrointestinal tract. Plaintiffs also contend that evidence of these "sips" is admissible as bearing on an alleged pattern of negligent monitoring of plaintiff's condition.

Plaintiffs have the better of this argument. Not only is the evidence of the "sips" relevant and admissible for the reasons they argue, but the facts of the case indicate that the admission of such evidence will neither confuse nor mislead the jury,[7] see, e.g., Newell Puerto Rico, Ltd. v. Rubbermaid, Inc., 20 F.3d 15, 21 (1st Cir. 1994); Pinkham v. Burgess, 933 F.2d 1066, 1071 (1st Cir. 1991). Defendants' motion to preclude evidence of the "sips" administered prior to March 1, 1994, is accordingly denied.

3. Defendants' Motion for Supplemental Voir Dire, document 11

Defendant lists some eleven questions that they desire the court to ask of the prospective jurors at the voir dire. The questions numbered 1, 7, 9, and 11 are questions which the court generally includes in every jury case. The remaining questions

---

[7]While the authorities do not generally distinguish between the terms "confusing" and "misleading" as set forth in Rule 403, Fed. R. Evid., 2 WEINSTEIN'S FEDERAL EVIDENCE § 403.05[1], at 403-49 (2d ed. Matthew Bender 1997), it clear that the facts in the particular case govern in each instance. Id. at § 403.05[2], at 403-51.

are found to be relevant to the issues to be litigated without placing undue emphasis on the position of either party. The court will accordingly inquire of the jury with respect to those questions, and the defendants' motion is granted.

### 4. Plaintiffs' Motion in Limine, document 14

As hereinabove indicated, the x-ray requisition slip which was apparently completed pursuant to Dr. Sutton's orders of February 27 and February 28, 1994, has been destroyed. Claiming that such destruction comprises spoliation of evidence,[8] plaintiffs seek relief, including the preclusion of defendants from offering evidence that such requisition calls only for a gastrografin test; preclusion of defendants from offering evidence that the purpose of the March 1, 1994, radiology test was only to discover whether plaintiff's esophagus was leaking; permission to the plaintiffs to present evidence that defendants destroyed the requisition; and a jury instruction that the jury may infer that the requisition called for both a gastrografin and a barium test.[9]

When a party claims injury due to destruction of a document, there must be "a sufficient foundational showing that the party

_____

[8]Spoliation is the intentional, negligent, or malicious destruction of relevant evidence. Trull v. Volkswagen of America, Inc., No. 94-15-JD, Order of Aug. 11, 1997.

[9]There is some indication that the gastrografin test is used to determine leakage, while the barium test is used to determine emptying of the stomach. It is unnecessary for the court to attempt to resolve the correctness of such claims in this order.

who destroyed the document had notice both of the potential claim and of the document's potential relevance." Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1159 (1st Cir. 1996). This is so because "of particular importance when considering the appropriateness of sanctions [for spoliation of evidence] is the prejudice to the non-offending party and the degree of fault of the offending party." Collazo-Santiago v. Toyota Motor Corp., No. 97-1365, slip op. at 15 (1st Cir. July 9, 1998).

While granting plaintiffs the relief sought in their motion would ease the requirements of proof of their legal theory, it cannot here be said that they have suffered such prejudice as to deprive them of proof of their claim. And, more importantly, the evidence in the case fails to show that as of the destruction of the requisition in September 1994 any of the defendants had any indication that plaintiffs contemplated litigation against them. The suit in the action was not brought until February of 1997.

As the court finds that the record fails to support proof of spoliation of evidence, defendants' motion must be and it is herewith denied.

5. Plaintiffs' Motion to Allow Supplemental Voir Dire and Proposed Opening Remarks by Judge to Jury, document 16[10]

Turning first to the proposed supplemental voir dire, the questions numbered 2, 3, 12, and 13 are generally included in the

---

[10]For reasons unclear, the motion refers to the two subjects, attaching separately the proposed voir dire and the proposed remarks to the jury. Defendants have filed dual objections (documents 19 and 22), which the court has duly considered.

6

court's general voir dire to every jury. Defendants' objections to questions 15 and 16 are sustained, as the court rules there is to be no motion of or any reference to insurance in this case, and those questions will serve only to introduce the issue of insurance into the litigation.[11]

While there is some merit to defendants' objection to the effect that questions 17 and 18 are governed by the more general questions numbered 6, 7, 10, and 11, the court overrules the defendants' objections in this respect and will present these questions to the prospective jurors. Accordingly, plaintiffs' motion concerning supplemental voir dire is granted in part and denied in part, all questions being found proper with the exception of questions numbered 15 and 16.

Concerning plaintiffs' proposal for the court's remarks to the jury, the court appreciates the willingness of counsel to educate it as to its duties, but must refuse the invitation to do so in the form proposed. The court will attempt to insure that the jury is fully apprised of those facts bearing on jurors' ability to sit and return a fair and impartial verdict based solely on the evidence and the court's instructions as to the law. Counsel for each party is, of course, free to object to the manner in which the court conducts its voir dire.

_____

[11]The court expects each counsel to advise every witness before testimony that there will be no questions asked nor should any answers be given or statements made to indicate that insurance is involved in this litigation. Similarly, any reference to insurance in any written exhibits or other documents should be redacted prior to introduction of such documents, either by agreement of counsel or in conjunction with the court.

6.  Conclusion

    The court has denied defendants' motion in limine to bar evidence of oral feeding prior to March 1, 1994 (document 10); granted defendants' motion for supplemental voir dire (document 11); denied plaintiffs' motion in limine (document 14); granted in part and denied in part plaintiffs' motion for supplemental voir dire (document 16); and denied plaintiffs' proposal for remarks by the trial judge to the jury (document 16).  The court will rule on objections to evidence as the evidence is offered and will rule on objections to requests for jury instructions as of the time of the charge conference.

    It now appears that the case is in order to go forward with jury selection as scheduled on the morning of July 21, 1998.

    SO ORDERED.

                                  _____
                                  Shane Devine, Senior Judge
                                  United States District Court

July 14, 1998

cc:  Bruce W. Felmly, Esq.
     Robert M. Larsen, Esq.

8